**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**

FILED
2008 Nov 03 PM 01:09
CLERK U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
TOLEDO



Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 08-31921 |
| | ) | |
| Shawn L. Soncrant and | ) | Chapter 7 |
| Shari F. Soncrant, | ) | |
| | ) | |
| Debtors. | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF DECISION REGARDING MOTION TO DISMISS

This case is before the court on the United States Trustee's motion to dismiss for abuse brought under 11 U.S.C. § 707(b)(2) and (b)(3) [Doc. # 17] and Debtors' response and amended response [Doc. ## 25 & 46]. A hearing was held that Debtor Shari Soncrant, Debtor's counsel and counsel for the United States Trustee ("UST") attended in person and at which the parties had the opportunity to present testimony and evidence in support of their positions. At the hearing, the court granted Debtors leave to file an amended Form 22A, Chapter 7 Statement of Current Monthly Income and Means Test Calculation. After reviewing the amended Form 22A, the UST has withdrawn his motion to dismiss this case under § 707(b)(2) and has indicated he is proceeding only under § 707(b)(3). [*See* Doc. # 54].

The district court has jurisdiction over this Chapter 7 case pursuant to 28 U.S.C. § 1334(a) as a case under Title 11. It has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 84-1 of the United States District Court for the Northern District of Ohio. Proceedings to determine a motion to dismiss a case under § 707(b) are core proceedings that this

court may hear and decide. 28 U.S.C. § 157(b)(1), (b)(2)(J) and (O).

Having considered the briefs and the arguments of counsel as well as testimony and evidence offered by the parties, for the reasons that follow, the court will deny the UST's motion.

## **BACKGROUND**

Debtors are married and have no dependents living with them. Shari Soncrant is an account manager at Superheat FGH Services, Inc., where she has been employed for approximately eighteen months. Notwithstanding its short duration, she views her employment as being stable. Shawn Soncrant is an operating engineer and has worked out of a union hall for approximately three years. As such, his employer changes on a job by job basis. In the past several years, he has experienced a fair amount of unemployment. In 2006, he earned only $21,989. Although he also experienced some unemployment in 2007, he earned $69,168 in that year.

Due to the economic circumstances in this area, in order to stay employed, it has become necessary for Shawn Soncrant to work hundreds of miles away in various locations around the country. As a result, he incurs travel, lodging and meal expenses that generally are not reimbursed by his employer. During the six months before Debtors' bankruptcy petition was filed, those expenses averaged approximately $713 per month. However, he was unemployed for several of those months, during which he did not incur such expenses. His total unreimbursed employee business expense in 2007 was $31,160. [Debtors' Ex. A, Form 2106-EZ]. Until early 2007, Shawn Soncrant also operated an excavation business and a truck and trailer repair business. However, both businesses ceased operations in January 2007. According to Shari Soncrant, the business failures have contributed to Debtors' financial difficulties and, in fact, business debt represents a significant portion of their unsecured debt.

In 2005, Debtors purchased their home, financed with an adjustable rate mortgage loan. In April 2007, the interest rate adjusted upward from 6.99% to 9.99%, resulting in their monthly mortgage payment being increased by $500. As a result, Debtors got behind on their mortgage payments and eventually negotiated a restructuring of the loan, with the lender agreeing to fix the interest rate at 9.99% and adding the arrearage to the end of the loan. Debtors' mortgage payments were current at the time of the hearing.

On April 17, 2008, Debtors filed for relief under Chapter 7 of the Bankruptcy Code. Their Schedule D shows total secured debt in the amount of $258,533.70, including $220,407 secured by their home, which Debtors value at $225,000, and debts owed on three vehicles – $20,083 secured by a 2002 Ford F-250 pick-up truck; $13,441 secured by a Harley Davidson that is used by Shawn Soncrant as his sole means of transportation and that Debtors value at $13,500; $4,601 secured by a 2000 Ford Expedition used by Shari

2

Soncrant and valued at $4,000 by Debtors. Debtors' Statement of Intention filed with their bankruptcy petition states an intention to reaffirm the debt owed on their home. It also states an intention to reaffirm the debt owed on two of the three vehicles. As intended, Debtors have surrendered the pick-up truck.

Debtors' bankruptcy schedules also show unsecured priority tax debts in the amount of $15,342 and unsecured nonpriority debts in the amount of $92,679, which amount includes significant business debt of at least $27,942. Debtors state on their petition that their debts are, however, primarily consumer debts.

Debtors' Schedule I shows total gross monthly income in the amount of $8,499 and net monthly income after payroll deductions in the amount of $6,357. Payroll deductions for Shari Soncrant include $125 as a 401(k) contribution. In addition, Debtors' 2007 net income tax refund (federal and state income tax refunds less school district taxes owed) was $5,425. Although Shari Soncrant testified that they do not typically receive a refund and that the refund was most likely the result of a $6,200 business loss deduction that will not be repeated since her husband's business operations have ceased, she agreed that Debtors' mortgage interest deduction in 2008 would increase over that claimed in 2007 by approximately $6,000.

Debtors' Schedule J shows total monthly expenses in the amount of $6,342, which includes, among other things, $2,327 for their home mortgage, property taxes and homeowners' insurance, $667 for child support for Shawn Soncrant's 13 year old son, and $797 for payments on their two motor vehicles. According to Schedule I and J, Debtors' monthly income after expenses totals approximately $15. However, Schedule J does not include Shawn Soncrant's unreimbursed employee business expenses.

Debtors' amended Form B22A calculating the means test shows that their annualized current monthly income at the time of filing this case was $105,782. The median income for a family of their size in Ohio is $59,786. However, no presumption of abuse arose under § 707(b)(2) after the calculation of allowed deductions. Instead, the UST is proceeding on his timely filed motion to dismiss for abuse solely under § 707(b)(3) based on the totality of the circumstances.

## LAW AND ANALYSIS

This case must be decided under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23, ("BAPCPA" or "the Act") because it was filed on April 17, 2008, after the effective date of the Act. Where debts are primarily consumer debts, the court may, after notice and a hearing, dismiss a Chapter 7 petition "if it finds that the granting of relief would be an abuse of the provisions of [Chapter 7]." 11 U.S.C. § 707(b)(1). Before BAPCPA, courts considered whether to dismiss a case for "substantial abuse" under § 707(b) based on the "totality of the circumstances." *See, e.g., In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989); *In re Price*, 353 F.3d 1135, 1139 (9th Cir. 2004). The Sixth

3

Circuit explained that "substantial abuse" could be predicated upon either a lack of honesty or want of need, to be determined by the totality of the circumstances. *Krohn*, 886 F.2d at 126. Congress incorporated its own version of this judicially created construct in § 707(b)(3) by requiring a court to specifically consider "(A) whether the debtor filed the petition in bad faith; or (B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." 11 U.S.C. § 707(b)(3)(A) and (B). Although pre-BAPCPA case law applying these concepts is still helpful in determining abuse under § 707(b)(3), under BAPCPA Congress has lowered the standard for dismissal in changing the test from "substantial abuse" to "abuse." *In re Mestemaker*, 359 B.R. 849, 856 (Bankr. N.D. Ohio 2007).[1]

The UST invokes the totality of the circumstances analysis under § 707(b)(3)(B) in arguing that granting Debtors a discharge in this case would be an abuse of the provisions of Chapter 7. Pointing to Debtors' above median income, their likely future income tax refunds, Shari Soncrant's contribution to her 401(k), and the fact that Debtors intend to reaffirm the debt on their home, the UST asserts that Debtors are not needy and have the ability to repay a meaningful portion of their unsecured debt in a Chapter 13 case. As the movant, the UST carries the overall burden of demonstrating, by at least a preponderance of the evidence, that Debtors' case should be dismissed. *In re Gonzalez*, 378 B.R. 168, 172 (Bankr. N.D. Ohio 2007).

Under § 707(b)(3), the court must consider the totality of the circumstances in determining whether a debtor is "needy," that is, whether "his financial predicament warrants the discharge of his debts" in a Chapter 7 case. *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 434 (6th Cir. 2004). Factors relevant to determining whether a debtor is "needy" include the ability to repay debts out of future earnings, which alone may be sufficient under some circumstances to warrant dismissal. *Krohn*, 886 F.2d at 126 . Other factors include "whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing,

---

[1] As this court noted in an earlier opinion:
While Congress has clearly lowered the dismissal standard, articulation of what that change really means in decision-making in a particular case is a slippery enterprise at best. A totality of circumstances amounting to substantial abuse would obviously also amount to abuse. The converse is not necessarily true. Perhaps more telling legislative evidence of a Congressional intent that bankruptcy courts should now afford less deference to a debtor's choice of Chapter 7 relief is the elimination from amended § 707(b) of the language in former § 707(b) stating that "[t]here shall be a presumption in favor of granting the relief requested by the debtor."
*In re Carney*, No. 07-31690, 2007 WL 4287855, *2, 2007 Bankr. LEXIS 4100, *7 (Bankr. N.D. Ohio December 5, 2007).

4

shelter and other necessities." *Id.* at 126-27. "Courts generally evaluate as a component of a debtor's ability to pay whether there would be sufficient income in excess of reasonably necessary expenses to fund a Chapter 13 plan." *Mestemaker*, 359 F.3d at 856 (citing *In re Behlke*, 358 F.3d 429, 435 (6th Cir. 2004)).

In this case, Shari Soncrant enjoys stable employment. Shawn Soncrant, on the other hand, has experienced a fair amount of unemployment. There is no evidence, however, that if he continues to accept jobs throughout the country, he will not enjoy relatively stable employment. As Debtors with regular, relatively stable income, they are eligible for adjustment of their debts through Chapter 13 since their debts are less than the statutory eligibility limits. *See* 11 U.S.C. §§ 109(e), 101(30). However, there has been no showing that Debtors have the ability to pay their unsecured creditors either within or without a Chapter 13 plan.

Debtors' monthly income after payroll deductions is $6,357. In addition, Debtors have the ability to increase their monthly income after payroll deductions by reducing withholding amounts from their pay. Debtors' 2007 net income tax refund totaled $5,425, representing excessive monthly withholdings of approximately $450. Although Debtors attribute the refund to a business loss deduction of $6,200 in 2007, they anticipate that their mortgage interest deduction in 2008 will increase by approximately $6,000 over the amount of interest claimed in 2007. Debtors should, therefore, anticipate future income tax refunds similar to that experienced in 2007. Accordingly, the court believes that Debtors could comfortably reduce their payroll withholding amount by at least $400 per month, which would yield total income after payroll deductions of $6,757.

After this adjustment to monthly income, Debtors' net income after payroll deductions less the expenses listed on their Schedule J equals $415. While, at first glance, it appears that this leaves Debtors with sufficient income to repay a meaningful portion of their unsecured debt, Debtors' Schedule J does not include the unreimbursed employee travel, lodging and meal expenses that are incurred by Shawn Soncrant in order earn his share of Debtors' monthly income. His unreimbursed employee business expenses averaged $713 per month for the six-month period before Debtors filed their petition. But he was unemployed for a couple months during that time period. Thus, at best, that figure provides a low estimate of his routine monthly unreimbursed business expenses going forward. His unreimbursed business expenses for 2007 totaled $31,160, or an average of $2,596 per month, which the court finds is a closer estimation of future monthly expenses that he must incur to earn his wages. These expenses have not been challenged by the UST and the court has no basis for finding them unreasonable. In any event, in either case, Debtors' monthly income falls far short of what is needed to pay all of their monthly expenses.

5

Nevertheless, the court is not required to accept all of the expenses as stated in Debtors' Schedule J and, in evaluating the totality of the circumstances, the court must consider whether living expenses can be reduced significantly without depriving Debtors or their dependents of adequate food, clothing, shelter, and other necessities. *In re Bender*, 373 B.R. 25, 30 (Bankr. E.D. Mich. 2007); *In re Burge*, 377 B.R. 573, 577 (Bankr. N.D. Ohio 2007); *see Krohn,* 886 F.2d at 126. To this end, the UST emphasizes as unreasonable Debtors' $2,327 mortgage expense, which they stated an intention to reaffirm, as it is approximately three times the applicable IRS standard under the means test. He also assets that Shari Soncrant's monthly 401(k) contribution of $125 is unreasonable. The UST argues that if Debtors seek less expensive shelter and eliminate the 401(k) contribution, they have the ability to repay their debts.

The UST's argument is based upon Debtors' Schedules I and J and does not take into account the unreimbursed employee business expenses that are incurred by Shawn Soncrant or the significant unsecured priority debt owed by Debtors. Even if Debtors eliminate the 401(k) contribution and dramatically decrease their housing expense, they will have no income after expenses to fund a Chapter 13 plan that will provide meaningful payment to general unsecured creditors.

Moreover, to the extent the UST argues that Debtors' mortgage expense is unreasonable based solely upon the IRS housing allowance under the means test, he presents no evidentiary foundation for comparing Debtors' actual mortgage expense to the IRS standard when determining the reasonableness of this expense. Where such a foundation has not been presented, this court has previously rejected a similar argument. *See In re Seeburger*, 392 B.R. 735, 742-44 (Bankr. N.D. Ohio 2008). In *Seeburger*, the court found that the IRS allowances applicable under the means test set forth in § 707(b)(2) are not determinative in a § 707(b)(3) analysis and, absent a foundation explaining how the IRS standards were calculated, on what data they are based, or how current that data might be, that the evidentiary value of the standards as a measure of reasonableness under a totality of circumstances analysis are minimal at best. *Id.* at 742-43; *see Harris v. U.S. Trustee (In re Harris),* 279 B.R. 254, 261 (B.A.P. 9th Cir. 2002). The court also noted that even in determining whether there is a presumption of abuse under § 707(b)(2), Congress did not limit a debtor's mortgage expense deduction to the applicable IRS standard. Rather, it specifically provided a deduction from current monthly income for the debtor's average monthly payments contractually due on secured debt during the sixty-month period following the date of filing the petition, as well as for any additional payments to secured creditors necessary for the debtor, in filing a Chapter 13 plan, to maintain possession of the debtor's primary residence. *Seeburger*, 392 B.R. at 743. Given the accommodation Congress has afforded consumer debtors under § 707(b)(2) with respect to their accumulated secured debt, as well as the

6

"totality of the circumstances" analysis required under § 707(b)(3), the court rejected, and rejects in this case, an arbitrary reduction of the debtor's actual mortgage expense to some multiple of the IRS standard for the purpose of projecting disposable income. *Id.* at 743-44; *See In re Pilarski*, Case No. BKY 07-30026, 2007 Bankr. LEXIS 3797, *10, 2007 WL 3452338, *3 (Bankr. D. Minn. Nov. 14, 2007) (finding no statutory basis for projecting disposable income based solely on the IRS housing allowance applicable under § 707(b)(2)).

The UST's argument that Debtors can seek less expensive shelter also rings hollow where there is no evidence, as in this case, that Debtors' are trying to retain a luxury home. *Cf. In re Felske*, 385 B.R. 649 (Bankr. N.D. Ohio 2008) (finding the existence of less expensive alternatives to be a proper consideration where the mortgage expense to maintain a $390,000 home was beyond that which is "normally permissible"); *In re Harter*, Case No. 08-10065, 2008 Bankr. LEXIS 2223, *4-5, 2008 WL 3875370, *2 (Bankr. N.D. Cal. Aug. 19, 2008) (addressing whether the debtor's vehicle was a "luxury automobile," and finding that "every nice middle-class ride [is not] a luxury vehicle"). The court does not find consideration of less expensive housing alternatives particularly relevant under these circumstances. *See Seeburger*, 392 B.R. at 744.

The availability of debtors' remedies under state law (such as a municipal court trusteeship or credit counseling proceedings that will stop wage garnishments under Ohio law) and the relief that might be afforded through private negotiations (such as a deed in lieu of foreclosure or extension and composition agreements with particular creditors) are other factors the Sixth Circuit has identified as relevant in deciding whether it would be an abuse to grant a Chapter 7 discharge in a particular case. Although Debtors negotiated a prepetition modification of their home mortgage debt to a fixed rate of 9.99%, with arrearages added to the end of the loan, neither party has otherwise addressed these factors in this case from the perspective of an impact on Debtors' ability to repay their general unsecured creditors. As the United States Trustee bears the burden of proof on the motion, *In re Wright*, 364 B.R. 640, 643 (Bankr. N. D. Ohio 2007), the court will assume that there are no such state law remedies or private negotiations that will further assist in resolving Debtors' financial problems.

Considering the totality of the circumstances of their financial situation, the court does not find that granting Debtors a discharge in this case would be an abuse of the provisions of Chapter 7. In large part, the failure of Shawn Soncrant's businesses and Debtors' gamble in 2005, like that of many others, on a variable rate mortgage led to their financial demise. Although the court recognizes that Debtors' gross annual income is substantial, when Shawn Soncrant's unreimbursed business expense and Debtors' unsecured priority debt are factored into their budget, the court finds that they do not have the ability to

7

repay a meaningful portion of their general unsecured debt.

## **CONCLUSION**

For the foregoing reasons, the court finds that the UST has failed to meet his burden of demonstrating that granting Debtors a discharge in this case would be an abuse of the provisions of Chapter 7. Therefore, the court will enter a separate order denying the UST's motion to dismiss.